**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

In re:

JOHN R. WOBBLETON, JR.                                    Case No. 19-10988-KHK
        Debtor.                                                            Chapter 13

## MEMORANDUM OPINION

Before the Court is Debtor John Wobbleton's Objection to Claim 3 (Doc. No. 28) filed on behalf of Janice Wobbleton for a domestic support obligation in the amount of $178,000. The Claim is classified as a priority under 11 U.S.C. §507(a) and as such, is entitled to be paid in full under the debtor's chapter 13 plan. The debtor objects to the classification and maintains that the claim should be classified as a claim for equitable distribution and therefore may be treated as a dischargeable unsecured non-priority claim and paid pro rata along with his other unsecured debt under the plan. An evidentiary hearing on the matter was conducted on August 1, 2019. At the conclusion of the hearing the Court took the matter under advisement. For the reasons stated below, this Court overrules the debtor's objection and concludes that the claim must be treated as a priority unsecured claim entitled to be paid in full under the plan pursuant to § 1328 of the Bankruptcy Code.

## Findings of Facts

John and Janice Wobbleton were married on July 19, 1980. *Exhibit ("Ex") 1 (Consent Judgment) at 2*. The marriage lasted for twenty-six years and two children were born of the union. *Id*. The Final Decree of Divorce ("Decree") was entered on March 25, 2008 and incorporated a Memorandum of Order that provided for the custody of the children, child

1

support, and the distribution of marital debt and property between the parties. *Id. at 15*. Both parties to the divorce were represented by counsel during the negotiations and proceedings. *Id. at 2*. At the time of the divorce, Mr. Wobbleton was a licensed Certified Public Accountant and part owner of an accounting firm. He was earning approximately $80,000 per year. *Trial Transcript ("Tr.") at 16:22-25*. Ms. Wobbleton was working part-time for the United States Postal Service and was earning about $20,000 annually. *Id. at 34:14*.

The Decree provided the parties would share joint custody of the minor children. It also provided that Ms. Wobbleton would receive the former marital residence located at 1740 Dan Peele Rd, Williamston, NC 27892 (the "property") as her sole property and most of its contents, monthly child support payments of $1,151, and 42.86% of Mr. Wobbleton's military retirement.[1] *Ex. 1 at 4-8*. The Decree required Mr. Wobbleton to transfer his interest in the marital residence to Ms. Wobbleton and to assume full responsibility for paying the mortgage and equity line of credit on the property. *Id*. He was also allowed to refinance the mortgages on the residence. *Id. at 13*. Mr. Wobbleton had to continue to maintain a life insurance policy for $750,000 and assign a portion of that policy in an amount exceeding the mortgage liens on the marital residence to Ms. Wobbleton in the event of his death before hers. *Id. at 16*.

Mr. Wobbleton no longer pays child support as both children are now adults and have moved out of the former marital residence. *Tr. at 12:7-8*. The monthly payments on the mortgage and equity line of credit total about $2,000 a month. *Id. at 32*.

Claim 11 and the supporting documents filed by Loan Care, LLC ("Loan Care")[2] indicate the original loan amount of the first mortgage was $180,000 on February 23, 2004 and the monthly payment was $1,036.18 plus the escrow. *Proof of Claim ("Claim") 11 at 5*. At the

---

[1] Child support payments under the Decree were reduced to $500 per month when the eldest child was no longer eligible to receive support.
[2] Loan Care is successor in interest to Benchmark Mortgage, Inc., the original lender.

time of the divorce, the balance due on the mortgage was $174,442.43. *Ex 1 at 14*. On the petition date, the remaining balance on the note was $121,336.92 and the maturity date was extended by a recent loan modification to March 1, 2034. *Claim 11 at 2 and 5*. The monthly payment is currently $1,569.97. *Id. at 4*. But for an anticipated escrow shortage on the mortgage in the amount of $730.82, the payments on the mortgage and credit line were current when this case was filed. *Id. at 2*.

Claim 8 and the supporting documents filed by Wells Fargo Bank, N.A. ("Wells Fargo") indicates the original ten-year equity line of credit at its inception was for $67,000 on February 23, 2004. *Claim 8 at 7*. When the divorce became final, the amount due on the credit line was $66,988.67. The credit agreement was modified by the Wobbletons on February 23, 2014 to pay the outstanding balance of $62,666 at a fixed rate of interest and to extend the maturity date to July 1, 2034. *Ex. 1 at 14*. The monthly payment remained the same at $466.02. *Claim 8 at 29*. On the petition date, the remaining balance on the equity line of credit was $54,149.48. *Id. at 2*.

The aggregate balance due on the mortgage and equity line of credit was $175,486.40 when this bankruptcy was filed. Under the amended plan dated June 27, 0219, the debtor proposes to surrender the property and pay a dividend of 75 cents on the dollar on the allowed non-priority claims in this case. (Docket No. 27).

## **Conclusions of Law**

"The analysis of dischargeability under § 523 must begin with the assumption that dischargeability is favored under the Code, unless the complaining spouse, who has the burden of proof, demonstrates the obligation at issue is actually in the nature of alimony, maintenance or support." <u>Tilley v. Jessee</u>, 789 F.2d 1074, 1077 (4th Cir. 1986) (quoting <u>In re Morris</u>, 10 B.R. 448 (Bankr. N.D. Iowa 1981)). In this case, the burden of proof rests with Ms. Wobbleton.

3

For a court to characterize an obligation as a domestic support obligation, it must find there was a "mutual intent" to create an obligation in the nature of alimony, maintenance, or support. *Id.* To help determine whether the mutual intent standard has been satisfied, courts in the Fourth Circuit have applied a four-factor test. They consider: 1) the function served by the obligation at the time of the Decree (i.e. daily necessities); 2) the financial situation of the parties at the time of the Decree; 3) the actual substance and language of the Decree; and 4) whether there is any evidence of overbearing or overreaching at the time of the Decree." Cases applying this test include, *In re Catron*, 43 F.3d 1465 (4th Cir. 1994); *In re Krueger*, 457 B.R. 465 (Bankr. D.S.C. 2011); *In re Mirea*, No. 11-11266-BFK, 2012 WL 3042239 (Bankr. E.D. Va. July 25, 2012); and *In re Combs*, 543 B.R. 780 (Bankr. E.D. Va. 2016).

However, "courts may look beyond the four corners of a divorce decree or the agreement of the parties to determine the nature of the payments constituting debts sought to be discharged." *In re Johnson*, 397 B.R. at 289, 297 (Bankr. M.D.N.C. 2008) *(finding an obligation that is essential … to protect a residence constitutes a nondischargeable obligation).*

The first factor to be considered is the function served by the obligation at the time of the divorce – in other words – whether the funds obligated at the time of the Decree would be used to cover the necessities of daily life. In this case, the former marital residence served as the home of Ms. Wobbleton and her children, so paying the lienholders on the property was essential to the support and maintenance of its occupants. The Decree fails to mention an award for alimony for Ms. Wobbleton. It would have been impossible for her to maintain the residence on her $20,000 salary and child support without the additional assistance.

The second factor to be considered is the financial situation of the parties at the time the Decree was entered. Judge St. John, in *Combs v. Combs* stated that an evaluation of the role the

obligation was intended to perform involves an examination of several factors including: 1) how long the parties had been married; 2) whether the parties had any children; 3) whether the award was intended to balance a disparity in incomes; and 4) whether, without the debt at issue, the support award would have been sufficient. *In re Combs*, 543 B.R. 780, 795-96. In the instant case, the parties had been married for twenty-six years, had children, and Mr. Wobbleton's nearly $80,000 annual income and prospects for advancement far exceeded the income and financial prospects of his ex-spouse. When the divorce became final, Ms. Wobbleton's $20,000 annual salary was insufficient to cover the mortgage and equity line of credit payments of approximately $24,000 per year. Since she received no separate award for alimony, it is clear that if Mr. Wobbleton had not been required to pay the mortgage and equity line of credit, Ms. Wobbleton would not have been able to pay for comparable shelter along with the other expenses of daily living including food, fuel, other utilities and taxes.

The third factor the to be considered is the actual substance and language of the Decree. There are several clauses in the Decree that address the treatment of the former martial residence and the liens secured by the property. Clause 8 allocates the former marital residence solely to Ms. Wobbleton, and in fact Mr. Wobbleton transferred his title and interest in the property to his ex-spouse subsequent to the divorce in accordance with the directive in the Decree. *Ex. 1 at 7*.

Clause 9D(11)(a) provides that Mr. Wobbleton would be responsible for paying the mortgage owed to Benchmark Mortgage, Inc. (now Loan Care, LLC) and Clause 9D(11)(b) provides that he would be responsible for paying the equity line of credit owed to Wells Fargo. The last paragraph of Clause 9 provides:

>     1.    The Defendants' payments and liability for these notes shall include the escrowed insurance and property taxes;
>     2.    The Defendant can refinance either or both debts, as long as the total indebtedness does not increase and the escrowed payments for property taxes

      and insurance are included.  The Plaintiff shall sign any necessary documents to accomplish this refinancing if requested by the Defendant.
          3.     The Defendant may pre-pay in whole or in part either of said debts. Upon payment in full of both of said debts, the responsibility of the Defendant to pay insurance or property tax escrow payments ceases.
          4.     If the Plaintiff sells the former Marital Residence, the two notes secured by the aforesaid Deeds of Trust will be paid from the proceeds; however, the Defendant will remain obligated to make the note payments under the terms of either or both of said notes directly to the Plaintiff and will pay the scheduled, amortized, monthly payments, excluding escrow payments for taxes and insurance, directly to the Plaintiff for the remaining term or until her death whichever occurs first.  Thus, the Defendant will be paying the note payments directly to the Plaintiff as if she had purchased them from the respective lenders.

*Ex. 1 at 13-14*.

      The last two sentences of Clause 9 state even if Ms. Wobbleton sells the house, the debtor is required to continue paying her directly the monthly payments minus the amounts reserved for taxes and insurance just as though she had purchased the notes from the respective lenders.  In other words, the parties intended and agreed that a portion of the payments would continue until the earlier of 2034 or the death of the ex-spouse.  This treatment tends to support the supposition that the payments represented a domestic support obligation.  *See* <u>In re Pagels</u>*, No. 10-71138-SCS, 2011 WL 577337 (Bankr. E.D. Va. Feb. 9, 2011) (finding the termination of the obligation upon the remarriage or death of the ex-spouse evidences the shared intention of the parties to create an obligation in the nature of alimony maintenance or support.)*

      Clause 12 of the Decree provides that Mr. Wobbleton must maintain an insurance policy for $750,0000 to be paid upon his death.  The Decree required that he "assign an amount exceeding the debt secured by the marital residence . . . until such time as the debts are paid in full." *Ex. 1 at 14*.  This clause clearly indicates that the obligation to pay the mortgages was sufficiently important to require further security to Ms. Wobbleton to insure she would receive the equivalent of the amounts due on the mortgages until the sooner of 2034 or the end of her

6

life. In the Court's view, this reading supports a finding that the obligation was intended to be in the nature of support during Ms. Wobbleton's lifetime rather than an equitable distribution of property.

The fourth factor to be considered is whether there is any evidence of overreaching at the time the Decree was entered. The Decree states, and the testimony of the Wobbletons confirms that each party was represented by competent counsel. *Tr. at 12:12-17*. Ms. Wobbleton has presented no evidence to the contrary, so the Court finds that neither party held undue influence over the other and that they were on equal legal footing at the time of the divorce.

After considering all of the clauses in the Decree that address the disposition of the residence and the payment of the mortgage and equity line of credit secured by the property, the Court concludes that the language and substance of the Decree support a finding that the obligation to make the payments was intended to be in the nature of support.

In addition to the four-factor test, the Court may also consider whether the obligation arises from a past or future commitment and whether it represents an allocation of debt or a division of property. *In re Austin*, 271 B.R. 97, 108 (citing *In re Petersen*, 133 B.R. 508 (Bankr. W.D. Mo. 1991)*. Both Mr. and Ms. Wobbleton are listed as co-borrowers on the promissory notes supporting Claims 8 and 11. Allocation of these debts solely to Mr. Wobbleton in the Decree relieved Ms. Wobbleton of the obligations and is therefore further evidence that the parties knew she could not afford to pay a portion of the debts and that she needed and would continue to need substantial financial support to augment her salary and child support award.

Mr. Wobbleton argues that the Court should consider the parties' treatment of the obligations for tax purposes as evidence of their intent and cites *In re Hardesty* as support for this proposition. *In re Hardesty, 553 B.R. 86 (Bankr. E.D. Va. 2016)*. However, the holding in

7

the *Hardesty* case is not applicable to the instant case. The property settlement agreement in that case included a clause providing that the parties specifically waived any rights to support. The agreement also included a clause specifying that the payment of the debt in question was not includable in gross income and not deductible which describes the appropriate tax treatment of an equitable distribution. Indeed, the Internal Revenue Code specifically states that an obligation may only be classified as an alimony or maintenance payment if "the divorce or separation instrument does not designate such payment as a payment which is not included in gross income … and not allowed as a deduction." *26 U.S.C. § 71*. The Decree in the instant case does not include comparable clauses and therefore the holding in *Hardesty* is inapplicable to this case.

      The Court acknowledges that both parties treated the obligation like an equitable distribution for tax purposes in this case and that this treatment was to the detriment of the debtor and to the benefit of the ex-spouse. However, this factor alone is insufficient to persuade the Court that the parties intended the payment of the obligations to be treated as an equitable distribution. Although the Decree addresses the tax treatment of the children as dependents, the document is silent regarding treatment of the mortgage obligations for tax purposes. In light of the requirements of the Internal Revenue Code and in the absence of specific language in the Decree on this point, the Court assigns no weight to the way the parties treated the payments on their tax returns following the divorce. The Court's inquiry remains focused on the intent of the parties at the time the Decree was signed, and not their conduct thereafter.

      Mr. Wobbleton also argues that his ex-spouse breached the Decree by not signing the documents that would have allowed him to refinance the debt on the residence. In fact, she cooperated on the modification of the equity line of credit as evidenced by her signature on the

Modification Agreement attached to Wells Fargo's proof of claim.  *See Claim 8 at 32*.  However, Ms. Wobbleton refused to sign the documents to refinance the first mortgage because the lender would have required her to transfer a 50% ownership interest in the property back to the debtor and this action was clearly contrary to the intent of the parties at the time the Decree was signed.  Thus, the Court will not consider her refusal to cooperate to refinance the mortgage as evidence of a breach of the Decree on her part in this matter.

Having considered the four-factor test used in the Fourth Circuit, and other relevant case law, this Court finds that Ms. Wobbleton has carried her burden of proving that, at the end of a long marriage, there was a substantial disparity of incomes between the parties; that payment of the mortgage and equity line of credit provided shelter which was an essential necessity for Ms. Wobbleton and the two children born of the marriage; and that the language and substance of the Decree indicates that the parties mutually intended that the payment of the mortgage debt by the debtor was in the nature of support.  Therefore, the Court concludes that Mr. Wobbleton's obligation to pay Janice Wobbleton the equivalent of the mortgage and equity line of credit along with the escrow amounts due on those debts must be classified as a domestic support obligation under 11 U.S.C. §507(a) and is not dischargeable under 11 U.S.C. §§523(a)(5) and 1328(a)(2).

The Court will issue a separate order consistent with the findings and conclusions in this Memorandum Opinion.

Date: _____                      _____
                                              Klinette H. Kindred
                                              United States Bankruptcy Judge

**Electronic copies to:**

Robert R. Weed
Robert Sergio Brandt
Thomas P. Gorman